**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **ELEANDRO ALMEIDA DE SOUZA,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**DAVID WESLING, et al.,**<br><br>**Respondents.** | **Civil Action No.**<br>**26-13761-BEM** |

**MEMORANDUM AND ORDER ON**
**PETITIONER'S MOTION TO ENFORCE**

**MURPHY, J.**

Before the Court is Petitioner's motion to enforce, which challenges the adequacy of the bond hearing at which Petitioner was found to be a flight risk. The Court concludes that, as a matter of law, a rebutted, uncorroborated Form I-213 is an inadequate basis for a flight risk finding and therefore will grant the motion to enforce and order Petitioner immediately released.

## I. Background

Petitioner entered the United States in September 2019, and was apprehended at or around the time of entry. *See* Dkt. 1 ¶ 2; Dkt. 13-3 at 3. Petitioner was released on an Order of Release on Recognizance shortly thereafter. *See* Dkt. 1 ¶ 2; Dkt. 1-3; Dkt. 13-3 at 3.

Petitioner was taken into Immigration and Customs Enforcement ("ICE") custody on or around August 14, 2026. *See* Dkt. 1 ¶ 1; Dkt. 13-3 at 2; *see also* Dkt. 7-1 (Warrant for Arrest of Alien). Shortly after his arrest, Petitioner filed a petition for a writ of habeas corpus challenging the lawfulness of his detention. Dkt. 1. The Court granted the petition in part and ordered that Petitioner be released or provided with an individualized bond hearing. Dkt. 10.

A bond hearing was held on August 24, 2026. Dkt. 12-1 at 3. At the hearing, the Government argued that the immigration judge should find Petitioner to be a flight risk primarily because when ICE officers stopped Petitioner's vehicle and attempted to question him, Petitioner ran away from the officers and his vehicle.[1] Dkt. 13-4 at 2:9–16. The only evidence the Government presented was Petitioner's Form I-213, which includes the following account:

> Officers initiated a vehicle stop with emergency lights and sirens . . . . Officers approached the subject and identified themselves as 'ICE' and 'Police.' All officers and agents were wearing exterior body armor with the ICE acronym displayed. All officers were wearing body worn cameras and activated them prior to the stop. . . . The driver, later identified as [Petitioner] stopped the vehicle but immediately opened the door and took off running. Officers followed on foot and attempted to locate [Petitioner]. [Petitioner] jumped over multiple fences into backyards in the neighborhood and Officers didn't follow but canvased the area for him while setting up a loose perimeter. . . . Officers were able to chase after him and detain him at 58 Newton St.

Dkt. 13-3 at 2.[2] Counsel for Petitioner presented evidence regarding Petitioner's employment, residence, character, and family ties, *see* Dkt. 13-2, and stated the following with respect to Petitioner's arrest:

> [H]e wasn't just pulled over, Your Honor. [Petitioner] has represented to me that he was driving when he was violently cut off by one vehicle, causing to have to jam on his brakes to avoid a collision. At the same time, as he was being pinned by other vehicles. Apparently, the stop they conducted was so aggressive, Your Honor, that he wasn't sure what was going on. And he's represented to me that there were no sirens or emergency lights, and that he jumped out of his car and ran out of a basic instinct of fear, which is why he was able to outrun a team of men. He also . . . represented to me that he was taken into custody after he went back towards his car, walking, not running, Your Honor, which the I 213 states was close

[1] The Government also noted that it was not clear how Petitioner is legally employed, given that his application for a work permit was denied in October 2023, and argued that Petitioner's arrest in June 2022 for motor vehicle violations indicates disregard for the laws of Massachusetts. Dkt. 13-4 at 2:7–8.

[2] A Form I-213, entitled "Record of Deportable/Inadmissible Alien," Dkt. 13-3, is "a standard government form that documents biographical and factual information about a deportable or inadmissible alien," *Garcia-Aguilar v. Lynch*, 806 F.3d 671, 673 (1st Cir. 2015). "An I-213 form documents the arrest of an alien unlawfully present in the United States. In addition to the circumstances of the arrest, the form contains the name, alien number, address, date of birth, photograph, fingerprints, criminal and immigration history, and other information about the arrestee." *Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45, 48 n.2 (1st Cir. 2014). It is not in affidavit form and is not written under the pains of perjury.

> to . . . his front door. After he realized that he wasn't being attacked, . . . that's when he went into custody without incident. And as the I 213 shows, . . . he answered officers['] questions voluntarily at that time. So, he's taken into custody at that point without, there's no struggle going on. And then . . . the I 213 also states, Your Honor, that officers were wearing body cameras, but no video or photographic evidence has been submitted into the record. And as it's the Department's burden here, Your Honor, I would argue that that evidence is conspicuously absent.

Dkt. 13-4 at 2:26–3:10.[3]

The next day, the immigration judge issued a written decision finding that Petitioner is a flight risk and that no monetary bond or alternatives to detention would be sufficient to mitigate that risk. Dkt. 12-1 at 6. Petitioner filed a motion to enforce judgment challenging the immigration judge's reliance on a Form I-213 account of Petitioner's purported flight from ICE officers, assessment that Petitioner's relief is "highly speculative," and failure to consider alternatives to detention or engage with Petitioner's evidence. *See generally* Dkt. 13.

On September 4, 2026, to ensure Petitioner's unlawful detention lasted not one day longer, this Court granted Petitioner's motion to enforce via docket order and noted that a written opinion detailing the Court's reasoning would follow in order to give the Court the opportunity to prepare a fulsome opinion. Dkt. 17. That reasoning is set forth below.

## II. <u>Discussion</u>

### A. <u>Jurisdiction</u>

As a threshold matter, Respondents argue that 8 U.S.C. § 1226(e) bars judicial review of the immigration judge's bond determination. Dkt. 15 at 1–5. It is true that this Court may not independently re-weigh the evidence presented to the immigration judge. *See Diaz Ortiz v. Smith*, 384 F. Supp. 3d 140, 144 (D. Mass. 2019). But "[d]istrict courts retain habeas jurisdiction to

---

[3] The Court cites to the unofficial transcript for this quotation, which it verified using the audio recording manually filed with the Court. *See* Dkt. 16.

ensure that immigration bond hearings are conducted within constitutional bounds." *Miti v. Moniz*, 827 F. Supp. 3d 206, 211 (D. Mass. 2026). And, as relevant here, "[d]istrict courts in the First Circuit have reviewed immigration judges' bond determinations for compliance with th[e] constitutionally mandated burden of proof." *Hernandez-Azuaje v. Hyde*, 2026 WL 221833, at *1 (D. Mass. Jan. 28, 2026). In such challenges, "[t]o show that an immigration judge failed to apply the correct standard, a noncitizen must either 'point to the language of the immigration judge's opinion or demonstrate that the evidence itself could not—as a matter of law—have supported the immigration judge's decision to deny bond.'" *Id.* at *1 (quoting *Diaz Ortiz*, 384 F. Supp. 3d at 143); *see also Miti*, 827 F. Supp. 3d at 217.

### B. <u>Exhaustion</u>

Next, Respondents argue that Petitioner must first exhaust his administrative remedies before the Board of Immigration Appeals ("BIA") before seeking relief from this Court. Dkt. 15 at 5. However, no statute mandates exhausting administrative remedies, and this Court has already declined to require it in similar circumstances, as have other judges in this District. *See Miti*, 827 F. Supp. 3d at 216 ("Under these circumstances, the Court will not require exhaustion. As Respondents acknowledge, there is no statutory requirement that a petitioner exhaust his administrative remedies before seeking habeas relief under 8 U.S.C. § 2241."); *see also Reyes Vargas v. Warden, Plymouth Cnty. Corr. Facility*, 2026 WL 1453510, at *4 (D. Mass. May 22, 2026); *Cuzco Ganzhi v. Moniz*, 2026 WL 1194941, at *1 (D. Mass. May 1, 2026); *Costa v. McDonald*, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026); *Vaca Espinoza v. Moniz*, No. 26-cv-11472, Dkt. 15 (D. Mass. June 17, 2026); *Castro Soc v. Moniz*, No. 26-cv-13376, Dkt. 19 (D. Mass. Aug. 17, 2026). The Court sees no reason to depart from its prior conclusion here.

### C. Merits

The Court turns now to the merits. At a bond hearing, the Government bears the burden of proving "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). "The preponderance-of-the-evidence standard is a more-likely-than-not rule." *United States v. Edwards*, 857 F.3d 420, 421 (1st Cir. 2017) (internal quotation marks omitted). The Court concludes that the Government's evidence, a rebutted, uncorroborated Form I-213, is insufficient as a matter of law to support a flight risk finding by a preponderance of the evidence.

The First Circuit has yet to squarely address this issue, but has held that, "when exercising its discretion" in evaluating an application for an adjustment of status, an immigration judge "may not give 'substantial weight' to a police report in the absence of 'a conviction or corroborating evidence of the allegations contained' in the report." *Rosa v. Garland*, 114 F.4th 1, 17 (1st Cir. 2024) (quoting *In re Arreguin De Rodriguez*, 21 I. & N. Dec. 38, 42 (B.I.A. 1995)); *see Maurice v. Bondi*, 154 F.4th 15, 21 (1st Cir. 2025) (same); *see also Soares De Souza v. Nessinger*, 2026 WL 1593406, at *6 (D.R.I. June 4, 2026) ("After the First Circuit's decisions in *Rosa* and *Maurice*, this Court has now held on several occasions that an uncorroborated police report cannot, by itself, establish dangerousness as a matter of law." (internal quotation marks omitted)); *Castro Soc*, No. 26-cv-13376, Dkt. 19 ("An uncorroborated police report describing Castro Soc's arrest for alleged assault and battery is insufficient, as a matter of law, to constitute clear and convincing evidence of dangerousness.").[4]

---

[4] A police report is even less reliable when it has been credibly rebutted by the subject of that report. In *Lee v. Barr*, 975 F.3d 69, 75–76 (1st Cir. 2020), an immigration judge relied on allegations in a police report to conclude that a habeas petitioner was unlikely to receive an adjustment of status, and therefore deny the petitioner's motion for a continuance pending his application for adjustment of status. In affirming the immigration judge's reliance on the police report, the First Circuit emphasized that the petitioner had failed to rebut the allegations in the report:

And, in many ways, Form I-213s are comparable to police reports. *See, e.g.*, *España v. Nessinger*, --- F. Supp. 3d ---, 2026 WL 821788, at *11 (D.R.I. Mar. 25, 2026) ("An I-213 form is nothing more than a police report created by a DHS officer." (footnote omitted)); *United Farm Workers v. Noem*, 829 F. Supp. 3d 801, 842 (E.D. Cal. 2026) ("[A]n I-213 serves a purpose analogous to a police report."). Accordingly, this Court concludes that, as a matter of law, a rebutted, uncorroborated Form I-213 is insufficient to support a flight risk finding by a preponderance of the evidence. *See Vaca Espinoza*, No. 26-cv-11472, Dkt. 15 ("[T]he sole evidence submitted by the government, Petitioner's Form I-213, could not—as a matter of law—have supported the immigration judge's decision to deny bond." (internal quotation marks omitted)); *see also España*, 2026 WL 821788, at *13 ("An unreliable, uncorroborated I-213 form simply cannot, by itself, serve as clear and convincing evidence sufficient for a finding of

---

> Lee suggests that neither the BIA nor the immigration judge should have relied on allegations contained in a police report in the absence of a conviction. The law is more nuanced: it allows immigration judges deciding motions for discretionary relief to rely on information contained in police reports even absent a conviction as long as the report is determined to be reliable, and its use is not fundamentally unfair. Here, the immigration judge found the police report fundamentally reliable because the report contained the percipient observations of the police officers including the wife's ripped shirt and the injuries observed, and consisted of the statements of both Lee's wife and the 14-year-old child that Lee has physically assaulted them. *In finding the report reliable, the immigration judge also observed that Lee did not produce an affidavit or testimony from his wife denying what was in the report . . . . And that opportunity to rebut a report bearing such indicia of reliability allows us to say in this context that use of the report was not fundamentally unfair.*

*Id.* (emphasis added) (cleaned up); *see also Vera Punin v. Garland*, 108 F.4th 114, 126 (2d Cir. 2024) ("[T]his I-213 bears the usual hallmarks of regularity. And it is highly probative of Vera Punin's alienage because it clearly reports that he is a citizen of Ecuador, not of the United States. Further, as has been noted, *Vera Punin did not provide any evidence to dispute the accuracy of the information in his I-213* or claim that it was obtained through improper means, such as coercion or duress. Accordingly, the agency properly admitted the I-213 into evidence as a reliable document." (emphasis added)).

dangerousness."). Here, Petitioner adequately rebutted the Form I-213 such that substantially relying on the Form I-213 to make a flight risk finding was improper as a matter of law.[5]

Finally, the Court notes that even under Petitioner's account, in which Petitioner does not dispute initially fleeing from the vehicle stop, such flight is insufficient to support a flight risk finding for the purposes of a bond determination. Indeed, this Court finds it eminently reasonable to flee out of fear under the circumstances as described by Petitioner, which one might understandably perceive to be a carjacking rather than a measured law enforcement action. *See United States v. Gonzalez-Ochoa*, No. 25-cr-00080, Dkt. 39, at *2–3 (S.D. Iowa Dec. 22, 2025) ("[T]he Government did not meet its burden of proving a serious risk that Gonzalez-Ochoa will flee. . . . [A]lthough the Government alleged that Gonzalez-Ochoa 'fled' from ICE officers, the Government could not prove that those officers, who were in plain clothes, ever identified themselves to Gonzalez-Ochoa is [sic] ICE agents when they showed up at his place of employment. Thus, at most, the evidence shows that Gonzalez-Ochoa 'fled' from a group of unidentified strangers who did not appear to be law enforcement agents." (citation omitted)).

While that alone is sufficient to resolve the instant motion, the Court takes this opportunity to opine further on the weight to which Form I-213s are entitled. Historically, Form I-213s have

[5] Though it is not for this Court to make credibility determinations in this context—and it does not make such determinations here—the Court will note that, disturbingly, Petitioner's account aligns with accounts of other arrests undertaken by ICE officers. *See, e.g.*, *Ozturk v. Trump*, 779 F. Supp. 3d 462, 471 (D. Vt. 2025) (describing an ICE arrest wherein "a hooded and masked officer in plainclothes approached [the petitioner] and grabbed her wrists," after which "[f]ive additional officers then surrounded her, took her cell phone, and handcuffed her" before she "was driven away in an unmarked vehicle"), *amended sub nom.*, *Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025); *United States v. Gonzalez-Ochoa*, No. 25-cr-00080, Dkt. 24 (S.D. Iowa Dec. 3, 2025) ("There were members of the public in the area when Defendant was arrested who asked the ICE agents to identify themselves, but no identification was made. At the time of the arrest, the ICE agents were in plain clothes.").

generally been considered trustworthy and reliable.[6] *See, e.g.*, *Zuniga-Perez v. Sessions*, 897 F.3d 114, 119 n.1 (2d Cir. 2018) ("A Form I-213 is considered presumptively reliable and admissible even absent the testimony of the officer who prepared it, unless the reliability of the form is somehow undermined." (internal quotation marks omitted)); *Rodriguez-Quiroz v. Lynch*, 835 F.3d 809, 821 (8th Cir. 2016) ("Form I-213s have long been considered reliable evidence."); *Antia-Perea v. Holder*, 768 F.3d 647, 657 (7th Cir. 2014) ("[I]t is well established that the I-213 is a presumptively reliable and admissible document."); *Pouhova v. Holder*, 726 F.3d 1007, 1013 (7th Cir. 2013) ("As a general rule, a Form I-213 is treated as inherently trustworthy and admissible even without the testimony of the officer who prepared it."); *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995) ("[I]nformation on an authenticated immigration form is presumed to be reliable in the absence of evidence to the contrary presented by the alien."), *as amended on denial of reh'g* (Jan. 12, 1995).

However, it is worth noting that there are critical differences between Form I-213s and police reports that necessarily make the former less inherently trustworthy. Most importantly, police reports are written with the knowledge that their veracity will be tested in the crucible of a criminal prosecution with the full panoply of constitutional protections this implies. Simply put, if a police officer lies in a police report, this will likely be uncovered in the course of the criminal prosecution. *See, e.g.*, *Chancellor v. City of Detroit*, 454 F. Supp. 2d 645, 653 (E.D. Mich. 2006) ("Bradley testified at his deposition that there was no traffic stop. Bradley conceded that this

[6] Though courts have likewise recognized that individual Form I-213s may not be reliable or trustworthy. *See, e.g.*, *Vera Punin*, 108 F.4th at 126 ("It is conceivable that a particular I-213 might be so irregular as to be 'facially deficient,' which 'would render it inadmissible.'" (quoting *Matter of Ponce-Hernandez*, 22 I. & N. Dec. 784, 786 (B.I.A. 1999))); *Pagoada-Galeas v. Lynch*, 659 F. App'x 849, 856 (6th Cir. 2016) ("The I-213 Form does not contain most of the indicia of reliability . . . : there is no indication an oath was administered or an interpreter was present; the border patrol officer did not testify; and there is no transcript. Additionally, although the document contains some questions and answers, the relevant statement appears only in a 'conclusory summary.'"); *Pouhova v. Holder*, 726 F.3d 1007, 1013 (7th Cir. 2013) ("In a specific case though, a particular Form I-213 may not be inherently reliable.").

portion of the police reports was a lie. He also testified that his statement in the [preliminary complaint report] that he recovered the gun from the lawn was false."). Form I-213s are not written with the expectation that their factual assertions are likely to be tested in court, which renders them inherently less reliable.

In addition, after repeated misrepresentations by ICE officers, both to this Court and others, the inherent trustworthiness of Form I-213s and other like documents is, at best, on perilous footing. *See, e.g.*, *Navarro v. Lyons*, 2026 WL 816791, at *2 n.3 (D. Mass. Mar. 25, 2026) ("The inconsistency of Respondents' representations is even more glaring considering they expressed their readiness to provide the underlying documents, but now state that the removals to Mexico are somehow based on a 'CHVN agreement' establishing a parole process . . . , which suggests that they should have known whether a written version exists or not."); *Alonso Zuniga v. Moniz*, No. 26-cv-12541, Dkt. 16 at 1 (D. Mass. July 2, 2026) (written concession by the Government that "[d]uring the bond hearing, agency counsel for [ICE] stated the criminal charges were pending" but that "following further review, the criminal charges were dismissed in February of 2025"); *Guevara Peruano v. Wesling*, 834 F. Supp. 3d 128, 148 (D. Mass. 2026) ("The Court finds that ICE has presented multiple false statements to the Court—from its earliest submission in this case to its latest."); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 821 F. Supp. 3d 102, 123 (D. Mass. 2026) (explaining (1) that Defendants told the Supreme Court that because of the Court's order, the Department of Homeland Security was forced to slam on the brakes mid-flight and detain the passenger noncitizens in Djibouti, but that an ICE official then testified that the stop in Djibouti had been planned, and (2) that publicly available flight data showed that the plane at issue was still in U.S. airspace at the time of the hearing, and that the plane then rested in Ireland for several hours before flying to Djibouti); *D.V.D. v. U.S. Dep't of Homeland Sec.*, 784 F. Supp. 3d 401, 405

(D. Mass. 2025) ("Defendants acknowledged an 'error' in their previous filings and statements to the Court. Defendants admitted, hours before the scheduled deposition of the witness who could allegedly verify the facts included in the prior declaration made under oath, that, in fact, there was no such witness and therefore no reliable basis for the statements put forward by Defendants. Defendants apparently cannot find a witness to support their claim that O.C.G. ever said that he was unafraid of being sent to Mexico." (citation omitted)); *see also Chi. Headline Club v. Noem*, 810 F. Supp. 3d 842, 862 (7th Cir. 2025) ("These are not the only inconsistencies and incredible representations in the record. . . . [E]very minor inconsistency adds up, and at some point, it becomes difficult, if not impossible, to believe almost anything that Defendants represent. . . . For example, . . . [an ICE Field Office Director] represented in his declarations that someone ripped a beard off an agent's face and that protesters broke a downspout at the ICE Broadview facility. But when questioned about these instances in his deposition, [he] acknowledged that he did not even know if it was a person that caused the damage to the downspout, much less a protester, and that he did not have proof that the agent's beard was actually ripped off his face." (citations omitted)), *vacated on other grounds*, 168 F.4th 1033 (7th Cir. 2026); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 495, 496 (E.D.N.Y. 2026) ("Respondents submitted to the Court a declaration from an ICE official, who made the false statement that Mr. Minarcaja Concha was located in New Jersey and would be brought in person to the December 12, 2025 hearing in compliance with this Court's Orders. . . . Respondents' violations and false statements delayed Mr. Minarcaja Concha's release from ICE custody by more than 31 hours."); *Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 928 (S.D. Iowa 2026) ("ICE did not serve the Notice to Appear on Gonzalez Ochoa in person despite having provided personal service of the arrest warrant and order to detain. The only logical explanation is that the Notice to Appear did not yet exist. ICE instead created the Notice to Appear

later in the day, then took the indefensible step of serving it via regular mail . . . . [I]t appears that ICE served the Notice to Appear by regular mail to obfuscate the timing of events and suggest that it might have been issued at the same time as the arrest warrant and order to detain. In other words, ICE *knew* it should not have issued the arrest warrant and order to detain in the absence of a Notice to Appear but sought to 'cover its tracks.'" (emphasis in original)); *cf. United States v. Castro*, 26-cr-00152, Dkt. 1 at 4–8 (D. Minn. Sept. 2, 2026) (charging ICE officer with six counts of making a materially false statement to a federal investigator).[7]

As a result, this Court is under the disheartening impression that, at best, ICE takes cursory steps to ensure that its statements are truthful, and, at worst, has a culture of outright lying to further its litigation positions. In view of the litany of deception and outright falsehoods that have infected ICE's representations to this court and others, this Court finds itself in the unenviable position of stating that uncorroborated Form I-213s are worth considerably less than uncorroborated police reports, which are, themselves, not entitled to substantial weight. *Cf. Rosa*, 114 F.4th at 17. Indeed, it is with profound regret that this Court no longer applies the presumption of regularity to ICE.

In sum, the Government failed to prove by a preponderance of the evidence that Petitioner is a flight risk. Having concluded that Petitioner prevails on his argument as to the sufficiency of the evidence, the Court need not consider Petitioner's remaining arguments.

## III. <u>Conclusion</u>

For the foregoing reasons, Petitioner's motion to enforce is GRANTED and Petitioner is ordered immediately released.

---

[7] And this is to say nothing of ICE's repeated violations of court orders. *See, e.g.*, *Guevara Peruano*, 834 F. Supp. 3d at 148; *Lu v. Joyce*, 2026 WL 352447, at *2 (D. Me. Feb. 9, 2026); *Minarcaja Concha*, 818 F. Supp. 3d. at 496; *see also Tobay Robles v. Noem*, No. 26-cv-00107, Dkt. 10-1 (D. Minn. Jan. 28, 2026) (appendix compiled by the *Tobay Robles* court listing 96 court orders across 74 cases that ICE violated in January 2026 alone).

**So Ordered.**

/s/ Brian E. Murphy
Brian E. Murphy
Judge, United States District Court

Dated: September 11, 2026